POMEROY (BELL v.). See Case No. 1,263.

## Case No. 11,259.

### POMEROY v. CONNISON.

[1 MacA. Pat. Cas. 40; Cranch, Pat. Dec. 112.]

Circuit Court, District of Columbia. Nov., 1842.

PATENT OFFICE APPEALS—INTERFERENCES—RIGHT OF PATENTEE TO APPEAL.

[In the case of an interference between an applicant and a patentee, the patentee has no right of appeal, under the act of 1836, from a decision awarding priority to the applicant and granting him a patent, for the existing patent is not invalidated or affected thereby.]

[Cited in Greenough v. Clark, Case No. 5,784; Yearsley v. Brookfield, Id. 18,131; Bowen v. Herriet, Id. 1,722; Whipple v. Renton, Id. 17,521; Hopkins v. Barnum, Id. 6,685; Jones v. Wetherill, Id. 7,508; King v. Gedney, Id. 7,795. Distinguished in Mowry v. Barber, Id. 9,892. Disapproved in Babcock v. Degener, Id. 698.]

[This was an appeal by Ralph Pomeroy, a patentee, from a decision by the commissioner of patents, in an interference, awarding priority of invention to Alexander Connison, and granting him a patent.]

B. S. Brooks, for appellant.

T. B. Jones (Seth P. Staples, of counsel), for appellee.

CRANCH, Chief Judge. Alexander Connison applied for a patent. The commissioner of patents being of opinion that the patent applied for would, if granted, interfere with a prior unexpired patent to Ralph Pomeroy, granted on the 24th day of January, 1841, gave him notice thereof, under the 8th section of the act of July 4, 1836 (volume 9, p. 549, c. 747 [Bior. & D. Laws; 5 Stat. 120]), and he appeared before the commissioner of patents, and contested the right of Mr. Connison, who claimed to be the first inventor. The commissioner, on the 26th of July, 1842, decided that a patent ought to issue to Alexander Connison, as the first original inventor, and that the same be accordingly issued, unless an appeal be entered within ten days.

From this decision Mr. Pomeroy appealed, and filed his reasons of appeal. The commissioner has laid before the judge the grounds of his decision, in writing, with the original papers and the evidence in the cause.

The first question is, has the judge jurisdiction upon this appeal from the decision of the commissioner—not rejecting, but granting, the application? In no other case under the patent laws can an appeal be taken from the decision of the commissioner, unless the application for a patent has been rejected by him. In no other case can an appeal be taken to the granting of a patent: and the reason for giving an appeal from the rejection of an application for a patent, and not giving an appeal from the granting of a patent, is, that the applicant whose application is rejected has no remedy. He cannot go into a court of law or equity to obtain a patent; nor can he maintain any action for the use of his invention. But, if the commissioner grant a patent erroneously, its validity may be tried; and any person interested may defeat it by a suit at law or in equity.

The general object in giving an appeal under the patent laws, therefore, is to correct the error of the commissioner in refusing to grant the patent applied for. This error in granting a patent is corrected by the ordinary tribunals of the country, and there was no need of a special tribunal for that purpose. This general object seems to me to govern all the provisions of the law upon this subject, and ought to be taken into consideration in their construction. Thus,

in the 7th section of the act of July 4, 1836, if the specification and claim shall not have been so modified as, in the opinion of the commissioners, shall entitle the applicant to a patent, he may on appeal, and upon request in writing, have the decision of a "board of examiners," &c., who may reverse the decision of the commissioner. And by the 16th section the remedy given by bill in equity is confined to the case of two interfering patents, and to the refusal of the board of examiners to grant a patent. The provisions of this section are, by the 10th section of the act of 1839 [5 Stat. 353], extended to all cases where patents are refused, for any reason whatever, by the commissioner of patents or by the judge, &c.

The proceedings before the commissioner and before the judge by appeals are all initiatory, all relating to the question whether a patent shall issue. They cannot affect a patent already issued. Such are the provisions of the act of 1836 (sections 5–12, 16), and of the act of 1839 (sections 10, 11). There is no section or clause in either of the acts which gives a patentee a right of appeal from the decision of the commissioner granting a patent to another person, unless that right be given by the 8th section of the act of 1836. By that section it is enacted: "That whenever an application shall be made for a patent, which, in the opinion of the commissioner, would interfere with any other patent for which an application may be pending, or with any unexpired patent which shall have been granted, it shall be the duty of the commissioner to give notice thereof to such applicants or patentees, as the case may be; and if either shall be dissatisfied with the decision of the commissioner on the question of priority of right of invention, on a hearing thereof he may appeal from such decision on the like terms and conditions as are provided in the preceding section of this act; and the like proceedings shall be had to determine which, or whether either, of the applicants is entitled to receive a patent as prayed for."

The power and jurisdiction given by the patent laws to the board of examiners and to the judge are special and limited, and must be construed and exercised strictly. The judge can only decide such questions and render such judgment as he is expressly authorized by the statutes to decide and render. In the case stated in the 8th section of the act of 1836, the judge is only "to determine" which, or whether either, of the applicants is entitled to receive a patent as prayed for. He can only act in a case where there are contending applicants for a patent, and those applicants must have prayed for a patent. A patentee is not an applicant. He has already obtained all he asked for. If his patent can be supported at law, he has nothing to fear. The grant of a subsequent patent erroneously to another cannot affect the validity of his patent. The judge is to determine which, or whether either, of the applicants is entitled "to receive" a patent. It would be absurd to say that a patentee is entitled to receive a patent after he has already received it. It is true that the 8th section, after speaking of applicants and patentees, says, if either shall be dissatisfied, he may appeal. The word "either" may be satisfied by applying it to the words "such applicants,"—i. e. "either" of "such applicants." And that such was the understanding of the legislature seems probable from the fact that they have only authorized the judge to determine between contending applicants, and not between an applicant and a patentee; for when they come to say what the judge is to do upon the appeal, we find it is "to determine which, or whether either, of the applicants is entitled to receive a patent as prayed for." The word "either" in the former parts of the clause is here explained to mean "either of the applicants." It cannot be contended that the judge is to decide whether a patentee is entitled to receive a patent which he has already received, and which he still has in his possession. This construction of this section is corroborated by the reference to it in the 12th section, which gives a right to file a caveat, and where it is said that "if in the opinion of the commissioner the specifications of claim interfere with each other, like proceedings may be had, in all respects as are in this act provided in the case of interfering applications," i. e. in the 8th section. The 16th section seems to give the remedy in a case of interfering patents, which this will be if the commissioner shall issue a patent to Mr. Connison. It also provides for the case if a patent is refused by the board of examiners on the ground that it would interfere with an unexpired patent; and the provisions of this section are extended, by the 10th section of the act of 1839, to all cases of refusal by the commissioner or the judge.

Where the patent has issued, the jurisdiction of the commissioner is exhausted. He has no further control over it, except in the case provided for in the 13th section of the act of 1836, where the patent is inoperative or invalid by reason of a defective or insufficient description. An adjudication of it by the commissioner or the judge has no effect upon a patent already granted, and is entirely inoperative as to the rights of the parties, unless the decision be against the applicant, against whom it would be conclusive, unless an appeal were given by the statute. He could apply to no other tribunal. But as to the patentee, a decision against him would be a brutum fulmen; and, if the second patentee should do any act under his patent to the supposed injury of the first patentee, he would have a right of action, and might maintain the validity of his patent in the same manner and to the same effect as if the second patent

had not issued. When the commissioner inquires as to the relative priority of invention between the applicant and the patentee, it is not for setting aside the patent already granted, over which he has no control. The decision of the commissioner does not affect the patentee if his patent is valid, and if it is invalid he has no right to complain. There was no necessity, therefore, that the patentee should have a right to appeal from the decision of the commissioner, which could have no effect upon his rights. This is a sufficient reason why the legislature should not give him the right to appeal in such a case. He has already abundant means of redress, both at law and in equity, if his patent is valid and should be violated; and this accounts for restraining the action of the judge to the case of contending applicants. An appeal is given to a disappointed applicant, because otherwise the decision of the commissioner would be conclusive against him. It is not given to the patentee, because the decision of the commissioner is not only not conclusive as to him, but does not in any manner affect his legal or equitable rights. And if the patent should be issued to Mr. Connison by the commissioner, the act of 1836 (section 16) expressly gives him a remedy in equity, where he may have the benefit of the oath of the patentee, in addition to all legal evidence taken, according to the rules of a court in equity, which has power and jurisdiction to act effectually in the case, and to adjudge either of the patents to be void; or, if he does not like the remedy by bill in equity, he may bring an action at law for a violation of his patent, in which case its validity may be tried and decided. In either of these cases his remedy may be full and conclusive, whereas, if he were to have an appeal, he would not thereby have any conclusive or effectual remedy; for, if upon such appeal, he should prevail in reversing the decision of the commissioner, the reversing decision would not be final and conclusive upon Mr. Connison. He would still have his remedy upon a bill in equity, under the same 16th section.

I am therefore of opinion that the legislature designedly limited the authority of the judge to the decision of the question "which, or whether either, of the applicants is entitled to receive a patent as prayed for"; and that, as in this case there is only one applicant, I have no jurisdiction under the 8th section of the act of 1836.

The only other case of appeal provided for in the statutes is when the application for a patent is rejected; and as the application of Mr. Connison was not rejected, but sustained, I have no jurisdiction of the appeal of Mr. Pomeroy, who is not an applicant.

Believing that I have no jurisdiction in this case, and that Mr. Pomeroy has all his rights and remedies reserved to him by the statutes upon this subject, I shall return the papers to the patent office, with a certificate of the substance of this opinion.